**Herschel Frazier CARVER, Petitioner,**

v.

**Fred B. ROSS, Superintendent, and the State of North Carolina, Respondents.**

**Civ. A. No. 1847.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Aug. 18, 1966.

Lemuel H. Davis, Raleigh, N. C., for petitioner.

Thomas W. Bruton, Atty. Gen. of N. C., for respondent.

## OPINION AND JUDGMENT

DALTON, District Judge (sitting by designation).

This cause comes before the court upon a petition for writ of habeas corpus, filed *in forma pauperis*, by a state prisoner pursuant to the provisions of Title 28 U.S.C. § 2254. Issues have been joined by the respondent who has filed an answer to the petition and a motion to dismiss.

The grounds on which the petitioner bases his allegation that he is being held in custody in violation of the constitution and laws of the United States are:

(1) Invalid Arrest Warrants and Indictments

(2) Illegal Search and Seizure

(3) Unnecessary Delay in Preliminary Hearing

(4) Denial of Counsel at Preliminary Hearing

The petitioner is serving a sentence at Odom Prison, Jackson, North Carolina, as the result of conviction in July of 1965 in the Superior Court of Buncombe County for the crimes of possession of burglary tools and attempted breaking and entering. At this time he was sentenced to a term of not less than nine nor more than ten years on the possession of burglary tools conviction and a term of not less than twenty nor more than twenty-four months on the attempted breaking and entering conviction, this sentence to commence at the expiration of the former and not to run concurrently. He appealed his case to the Supreme Court of North Carolina, and on November 24, 1965 that court affirmed the ruling of the Superior Court. He then petitioned the Superior Court for a Post-Conviction Hearing, but on December 15, 1965, after a review of the record and with no plenary hearing, the Superior Court denied the petition.

On February 19, 1966 the petitioner requested Judge Falls of the Superior Court of Buncombe County to appoint counsel for him in order that he might obtain review of the ruling before the Supreme Court of North Carolina. The request was denied on the grounds that the sixty day period for appeal had expired. In March of 1966 the petition to this court was filed.

It is the opinion of the court that the petitioner's allegation that there

was an unlawful search and seizure makes out at least a prima facie basis for relief. He has not yet been accorded a plenary hearing on his claim; the only evidence in the record as to the facts surrounding his arrest and conviction is the evidence which was presented at the time of the petitioner's trial in the Superior Court of Buncombe County. While the evidence in the record is sufficient for the court to make a ruling on the petitioner's other allegations, it is not detailed enough for the court to pass on the question of the legality of the search and seizure of the evidence which was used to convict the petitioner of possession of burglary tools. For reasons presented herein, the court feels that there is sufficient merit to the allegations of petitioner that this evidence was unlawfully seized to warrant ordering a hearing in which all of the facts relating to the seizure of this evidence may be presented by both sides and a ruling made thereon.

The evidence in the case, while not detailed enough for a decision on the record, discloses the following framework of events:

Around midnight of April 17, 1965, two city police officers discovered the defendant and one Herman Hutchinson attemping to break into Moore's Bakery in Asheville, North Carolina. The officers had been called by residents of the area who had seen the two men go to the back of the bakery and were suspicious of them. When the two were surprised, Hutchinson was in the process of prying the door to the bakery open with a crowbar, while the petitioner was pulling on the door with his hands. Hutchinson started to run, and after refusing to halt at the officers' command he was shot and wounded. The petitioner did not run but remained at the door with his hands in the air. Hutchinson was sent to the hospital, and the petitioner, who was intoxicated, was placed in the police wagon. An Officer Godwin arrived at this time and was told by residents of the area that they had seen the two men get out of a car which was parked sixty or seventy feet from the bakery. Officer Godwin asked the petitioner if the car were his, and the petitioner said that it was not. The petitioner was then taken away to be locked up, and Officer Godwin went over to the car and looked inside. The keys apparently were in the car, and when he looked in the officer saw an overnight traveling bag on the floor in the back of the car. The officer got into the car, which was unlocked, and upon looking into the bag found the tools in question.

The petitioner was questioned further the next morning, apparently after having been properly advised of his rights, at which time he admitted ownership of the car and the tools, and made other incriminating statements concerning the crimes for which he was convicted. He received a preliminary hearing on April 21, 1965 and was indicted by a grand jury at the May term of the Superior Court of Buncombe County. At his trial in July of 1965 the petitioner, represented by court-appointed counsel, entered a plea of not guilty; a jury found him guilty.

The importance of the facts in a case involving a search and seizure of evidence cannot be overemphasized, since in this area it is very difficult to lay down specific rules of law, the controlling factor being a determination as to whether or not under the circumstances the search was *reasonable*. And it is well-recognized that the principles applicable to the search of an automobile differ from those which are applied to the search of a fixed structure of some type. What is the reasonable search of an automobile may not be reasonable in the case of a house. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L. Ed.2d 777 (1964).

The court has decided that the facts appearing in the record are not sufficient for a decision based solely thereon, and that for this reason a hearing should be held in which the facts may be more fully developed. It cannot be said until after such a hearing just what principles of law will be found to be ap-

plicable to this case; however, the court will point out some of the possibilities which are raised by the facts now in the record.

 It is recognized that a vehicle may be searched if there is probable cause to believe that the vehicle contains contraband of some sort. It is said further that for this principle to apply, it is necessary that the vehicle be in a mobile state and that it not have come to rest in such a way that it is no longer necessary to apply the rules which are peculiar to automobiles. There is some inconsistency in the cases as to when a vehicle loses its mobility and thereby becomes subject to the rules for searching fixed structures, which rules do not include the right to search without a warrant upon probable cause to believe that contraband is contained therein. However, the Fourth Circuit has held that a parked vehicle *may* still be subject to the rule which permits a search upon probable cause to believe that there is contraband in the vehicle. See United States v. Haith, 297 F.2d 65 (4th Cir. 1961), cert. den., 369 U.S. 804, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962); United States v. Walker, 307 F.2d 250 (4th Cir. 1962).

There may also be some question as to whether this was even a search and seizure. In Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965), an officer had arrested the defendant for drunk driving, after the defendant had run into a tree and wrecked his car. The officer took the defendant away and then returned to the scene to remove the car. He found that it could not be moved under its own power, so the officer sent for a wrecker. While waiting for the wrecker, the officer began to roll up the windows of the car to secure it from the weather, as it was raining hard at the time. In doing so, he noticed a handbag in the back of the car with bundles of currency visible within it. The defendant was subsequently convicted of bank robbery with the currency being used as part of the evidence in the case. Although the conviction was set aside by the First Circuit on other grounds, that court held that the currency taken from the car was admissible evidence, that in fact this was not even a search since it is well-established that "it is not a search to see what is patent and obvious". The court said further that "police officers are not required to go about their routine duties with their eyes shut." The court noted that the officer had no intention of searching the car when he returned to it and did not rummage through the glove compartment or pry into the trunk.

It is not clear from the record of the case at bar what the motives of the officer were when he went into the petitioner's car. He may have been still acting with the investigation of the attempted storebreaking in mind, or he may have embarked on an entirely new investigation as to who might own the car, about which the people in the neighborhood seemed to be concerned. If the officer was seeking to find out who owned the car, which was sitting on the street late at night with the keys in it, and if in the course of a lawful investigation of the car he came upon the burglary tools, it may be that this should not properly be termed a "search" in legal contemplation of the word. On the point that an officer may legally seize contraband which is open to his view if he is otherwise lawfully on the premises, see also United States v. Williams, 314 F.2d 795 (6th Cir. 1963) and United States v. Horton, 328 F.2d 132 (3d Cir. 1964), cert. den. sub nom. Edgar v. United States, 377 U.S. 970, 84 S.Ct. 1651, 12 L.Ed.2d 739 (1964).

The question is also raised by the case at bar whether or not this was a search incident to the arrest of the petitioner. This was the question before the United States Supreme Court in Preston v. United States, supra. In *Preston* the facts were as follows: police officers in Newport, Kentucky, received a call at three o'clock in the morning telling them that three men acting suspiciously had been seated in a car parked in a business district since ten o'clock the evening before. Officers went to the place and there

found the petitioner and two companions in the parked car. When questioned as to their reasons for being there the men gave answers which made the officers suspicious. They all admitted that they were unemployed, and between them they had but twenty-five cents. They had no title to the car, which one of them said had just been purchased the day before. The officers arrested them for vagrancy, searched them for weapons, and took them to the police station. The car was not searched at the time of the arrest but was driven by one of the officers to the station. From there it was towed to a garage. Soon after the men were booked at the station, the officers went to the garage to search the car. When they looked in the glove compartment they found two loaded revolvers; however, they could not get into the trunk of the car. They went back to the police station, and there they were told to return to the car and try to get into the trunk. They returned, and one of the officers succeeded in getting into the trunk by way of the back seat of the car. In the trunk the officers found "caps, women's stockings (one with mouth and eye holes), rope, pillow slips, an illegally manufactured license plate equipped to be snapped over another plate, and other items." This evidence led one of the men to confess that they had planned to rob a bank. The F.B.I. was called into the case, and the items seized were turned over to it. Over their objections to the use of the items seized from the car, the men were convicted of conspiracy to rob a federally insured bank.

The court said first that unquestionably police had a right to make a search without a warrant if it was incident to a lawful arrest. However the court went on to say:

> The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. * * * The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime— assuming that there are articles which can be the "fruits" or "implements" of the crime of vagrancy. * * * Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. * * * We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible.

*Preston* has been cited a great many times by the lower courts, and the interpretations of the case are not consistent. Apparently the Fourth Circuit has not yet had occasion to interpret the case; therefore, some of the cases decided by the other courts will be mentioned. Also see James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965).

In the case of Smith v. United States, 118 U.S.App.D.C. 235, 335 F.2d 270 (1964) officers were investigating stolen car complaints. The defendants had been arrested the night before, and their car (and another car, which had been stolen)

had been towed to a service station. The cars were searched the next day. The court held that the evidence obtained in this manner was inadmissible, under the authority of *Preston*.

In Adams v. United States, 118 U.S. App.D.C. 364, 336 F.2d 752 (1964), cert. den. 379 U.S. 977, 85 S.Ct. 676, 13 L. Ed.2d 567 (1965) the situation was a little different. There a police car was cruising about the street in the early morning hours and came upon two men, who ran from the police car. An immediate search of the area revealed that a store had been robbed. Within a half hour the police officers saw one of the men getting into a car parked at the rear of the store which had been robbed and arrested him. The keys to the car were handed over by the defendant, and the officers searched the trunk. On appeal from his conviction the defendant argued that since there was no way that he could have used any weapons or destroyed any evidence, the trunk being locked and the keys in the possession of the officers, the search was illegal. The court did not agree, saying that there was nothing in *Preston* which would prohibit this search incident to the arrest, even though the officers could have obtained a warrant for the search and even though the defendant was under their control.

In Price v. United States, 121 U.S.App. D.C. 62, 348 F.2d 68 (D.C.Cir. 1965), cert. den. 382 U.S. 888, 86 S.Ct. 170, 15 L.Ed.2d 125 (1965) a safe, containing among other things some rolls of quarters and an envelope full of money, had been stolen from a store, and police officers had been given a description of the suspects' car. Two hours later the officers located a car answering the description, with a crowbar and rolls of quarters on the back seat. The defendants appeared and got in the car, whereupon the officers, who had been hiding, questioned the defendants and then arrested them. The defendants and the car were taken to the police station, where the stolen goods were taken from the back of the car. About a half hour later one of the

detectives went out to the police lot and discovered a friend of the defendant reaching under the front seat of the car. The man was arrested and taken inside, after which the detective went back to the car and looked under the front seat. He found an empty envelope with the storeowner's writing on it. The court held that the evidence which was taken first from the car was legally obtained, saying:

> The seizure of the tools, rolls of quarters and bag of brass fittings as incidental to the original arrest is not obscured by the failure of the officers to take these articles from the car at the time of the arrest instead of waiting until the car in which they visibly reposed reached the station.

The court went on to consider the question of the envelope:

> He [the detective] arrested the man, took him inside, returned to the car and found the envelope. Thus he came into its possession at the place of the arrest and contemporaneously with it; for the sequence followed by the officer, that is, first taking the arrestee into the station, was a reasonable and practical one and the brief time thus consumed did not destroy the contemporaneousness of the search.
>
> \* \* \* \* \* \*
>
> \* \* \* The search of the car at the parking lot which disclosed the envelope \* \* \* was part of a continuing series of events which included the original arrest and continued uninterruptedly as lawful police investigation and action.

The last case on the point in the District of Columbia Circuit is Bowling v. United States, 122 U.S.App.D.C. 25, 350 F.2d 1002 (1965). A store had been robbed in the District of Columbia. A few hours after the crime, Virginia police officers stopped the car in which the defendant was riding, the officers suspecting that one or more of the occupants had taken part in a robbery which had occurred in Virginia. The men

were arrested and taken to the Virginia service station which had been held up. There the car was searched and a revolver found which had been used in the District of Columbia crime. The court held that the search was not incident to the arrest, citing *Preston*, and that therefore the evidence was illegally obtained. The dissenting opinion pointed out that the arrest in *Preston* had been for the minor charge of vagrancy, the conviction had not been for an act but for intending to do an act, and that the search under these circumstances was the type of search which should always be discouraged. The opinion said that the majority opinion should have considered what was *done* in *Preston* rather than what was *said*, that under the facts of *Bowling*, the search was not so remote in time or place as to be invalid under the authority of *Preston*.

In Sisk v. Lane, 331 F.2d 235 (7th Cir. 1964) cert. den. 382 U.S. 888 (1965) the defendant was arrested for murder and taken to the police station. His car was towed to the station and searched immediately. Six days later the car was searched again, and evidence by this search was used against the defendant. By way of dictum the court said that *Preston* would require that the evidence be excluded.

The case of United States v. Cain, 332 F.2d 999 (6th Cir. 1964) involved convictions for conspiracy to receive stolen money and receipt of stolen money. Tennessee officers had reason to believe that two fugitives from Kentucky, wanted for parole violation in that state, were going to meet some other parties at a certain place in Tennessee. They put the place under surveillance and arrested the fugitives when they appeared, along with the three persons who met them. The cars belonging to the parties were taken to a police lot and locked. The suspects were questioned for about two hours, and then they were all taken to jail and locked up. The officers then went to the cars and found in them evidence which linked the defendants to a crime which had

taken place the day before in Kentucky. The court held that under *Preston* the search had been illegal.

In Crawford v. Bannan, 336 F.2d 505 (6th Cir. 1964), cert. den. 381 U.S. 955, 85 S.Ct. 1807, 14 L.Ed.2d 727 (1965), the defendant, who was suspected of robbery, was arrested at his car. He was carried off in the police wagon to be locked up, after which the officers who remained behind searched his car. The court held that the fact that the defendant had been taken away would not make the search illegal where it was otherwise incident to the arrest. This, said the court, was not the holding of *Preston*, and the search was incident to the arrest and valid. See also the case of Arwine v. Bannan, 346 F.2d 458 (6th Cir. 1965), cert. den. 382 U.S. 882, 86 S.Ct. 175, 15 L.Ed.2d 123 (1965).

The last Circuit Court case which will be mentioned is Westover v. United States, 342 F.2d 684 (9th Cir. 1965), appeal pending in United States Supreme Court. In this case the defendant was arrested by state officers on suspicion of robbery as he was entering his car. At this time both he and the car were searched. The next day F.B.I. agents interrogated the defendant and searched the car again. The court held, by way of dictum, that evidence obtained in the second search was not admissible under *Preston*.

See also on the question of interpreting *Preston*, the cases of United States v. Rodgers, 246 F.Supp. 405 (E.D.Mo. 1965) and Trotter v. Stephens, 241 F. Supp. 33 (E.D.Ark.1965).

█ The court will not at this time attempt to apply *Preston* to the case at bar. That will be done after the facts have been developed at the hearing. It does seem, however, to be clear that it is still proper to make a search of an automobile incident to a lawful arrest. This is recognized in *Preston*. It should be noted that the reasons given in *Preston* for this rule were given *as examples* and apparently were not intended to be

all-inclusive. Obviously it cannot be said that all justification for a search incident to an arrest vanishes when the accused person is under the control of the officers; the fact of arrest necessarily implies control by the officers. Too literal an interpretation of the reasoning of the Supreme Court would mean that the Court intended to prohibit all searches made incident to an arrest. By the express language of the Court this was not intended. The controlling factor continues to be that of *reasonableness* under the circumstances. In the case at bar, for instance, where the car had not been towed to the safety of the police station, it could be that the officers feared that there were still other accomplices at the scene of the crime who had not been apprehended. Moreover, the time lapse between the arrest and search was not nearly as great. But, to repeat, all of this will have to be considered in the light of those facts developed at the hearing.

Although the court feels that the other allegations of the petitioner could be decided on the strength of the record as it now stands, it would be proper, since the hearing is to be held, for the petitioner to also present any evidence at that time which might bear on his other allegations. He might develop, if he can, the allegation that he requested counsel at his preliminary hearing but was denied same.

It is ordered that a hearing be held in the above matter in the United States District Court for the Eastern District of North Carolina, Raleigh Division, on a date to be later fixed, and upon request of petitioner for the appointment of counsel to represent him, it is further ordered that Lemuel Davis, Esq., of the Raleigh, North Carolina Bar be appointed to represent the petitioner in connection with such hearing.

The Clerk of this court is directed to send a copy of this opinion and judgment to counsel, including Mr. Davis, and to the petitioner.